BANKS, Justice,
for the Court:
This appeal presents one issue: was an award of $15,000 as part of a property settlement from a divorce action not supported by the evidence and, therefore, manifestly wrong? We find that a portion of the $15,000 judgment was granted based on a clearly erroneous assessment of the evidence. We reverse the $15,000 judgment, affirm the remainder of the trial court’s final decree, and remand for entry of a $10,000 judgment.
I.
This case is on appeal from the Warren County Chancery Court, where the Honorable James E. Nichols granted a divorce on the ground of irreconcilable differences to Bob and Beverly Melchiors. On May 21, 1991, Bob and Beverly filed a joint petition for divorce on the ground of irreconcilable differences. However, the parties could not, among other things[1], agree on a division of property. Following a hearing on May 22, 1991, Judge Nichols awarded Beverly a judgment of $15,000, plus legal interest, against Bob. The judgment was founded on Beverly’s contention that Bob owed her $15,000 — the remainder of $40,- *1238 000 she initially brought into the marriage.[2] On the other hand, Bob testified he could not recall exactly how much money Beverly brought into the marriage, but denied he was $15,000 in debt to Beverly.
Bob filed a motion to reconsider judgment on May 31, 1991. This motion was denied by the trial court on June 13, 1991. Aggrieved, Bob now appeals to this Court.
II.
This ill-fated marriage was entered on April 14, 1990. For all intents and purposes it ended almost immediately and the parties began to discuss parting and ac-countings in July 1990. They finally separated in December 1990. Prior to that time, significant events included an unsuccessful attempt by Bob to have Beverly committed for alcohol dependency in July, followed by demands for accounting for moneys spent and the repayment from Bob to Beverly of certain funds.
Beverly, 49 years old at the time of the trial, met Bob eight years her junior, in Milwaukee, Wisconsin, in 1989 at a song and dance lounge. According to Bob, they had their first date in November of that year. In December 1989, Bob moved to Vicksburg, Mississippi, after accepting a job with a company there. Beverly retired from her factory employment in Wisconsin, sold her house there and moved to Vicksburg in March 1990. Beverly cleared over $35,000 from the sale of her home, and she had other savings.
Bob, who earned $47,000 per year in his employment, opened an account with a credit union. Beverly claims to have given Bob funds which were deposited into the account, and further, to have given Bob additional funds in cash and travelers checks.
Beverly produced an accounting of cash disbursements she alleged she surrendered to Bob immediately before, and during the course of, their marriage. The accounting was signed by Beverly and written in her own hand. According to this accounting, Beverly gave Bob a total of $31,543.53.[3] In addition, her accounting indicates Beverly received $17,467.75[4] in repayment from Bob. This leaves $14,075.78.
Bob introduced into evidence an accounting of receipts from and payments he made to Beverly. This accounting was prepared by Bob, signed by both Bob and Beverly, and dated July 20, 1990. According to this accounting, Bob paid Beverly a total of $17,467.75 (which coincides with Beverly’s accounting and testimony) and notes that Bob still owes Beverly $3,000. In contradiction to Beverly’s accounting, however, Bob’s accounting indicates Beverly only brought $26,000 into the marriage.[5] Of *1239 this $26,000, Bob’s accounting indicates he personally consumed $24,477 (which would be Bob’s total liability to Beverly). The accounting also indicates that Beverly personally consumed $4,009.25 in living expenses paid by his and her funds. Adding the $4,009.25 to the $17,467.75 both parties agreed Bob had paid to Beverly amounts to a total of $21,477. Subtracting what Bob owes Beverly ($24,477) from what Beverly has already accepted from Bob ($21,477), Bob testified he remained $3,000 in debt to Beverly. Thus, depending on which accounting is consulted, a discrepancy of about $11,000 exists regarding the amount Bob owed Beverly.
III.
The scope of appellate review on challenges to findings of fact is “quite limited.” Gilchrist Machinery, Inc. v. Ross, 493 So.2d 1288, 1292 (Miss.1986). This Court has created a long and unbroken line of cases holding a finding of fact made by a trial judge shall remain untouched unless it is determined from the record of the proceedings that that finding is manifestly wrong. Varner v. Varner, 588 So.2d 428, 435-36 (Miss.1991); Gilchrist, 493 So.2d at 1292; Dungan v. Dick Moore, Inc., 463 So.2d 1094, 1100 (Miss.1985); Tedford v. Dempsey, 437 So.2d 410, 417 (Miss.1983); Culbreath v. Johnson, 427 So.2d 705, 707-08 (Miss.1983). A trial court’s finding of fact is found to be manifestly wrong when “although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.” UHS-Qualicare v. Gulf Coast Com. Hosp., 525 So.2d 746, 755 (Miss.1987).
In the instant case, there is nothing inherently incredible[6] about Beverly’s testimony in general. She claims that she gave Bob cash and checks, that she came with $40,000, and left with $16,000. She produced documentation that she had the $40,-000 and that she left with approximately $16,000. Beverly’s own accounting, however, indicates that she gave Bob a total of less than $40,000 and that the difference between what she gave and what she got back from Bob was a total due of less than the amount ordered by the chancellor. Moreover, in order to award her the amount shown in her accounting, the chancellor would have to ignore the fact that Beverly enjoyed substantial benefit from some of the amounts expended.
Nonetheless, the trial court specifically found Beverly to be entitled to a $15,000 judgment in compensation for unreturned money she gave Bob. There is no indication, either in the record or in the final decree, of the evidentiary basis upon which the trial court granted the $15,000 judgment. Upon review of the record and the exhibits, we do not find support for the judgment.
Viewing Beverly’s accounting alone, Bob would owe Beverly no more than $14,-075.78 to reimburse her for every penny she expended. Clearly the amounts spent on the vacations are, at least partially, attributable to Beverly. In fact, the entire amount expended could be deducted, attributing one-half to Beverly and the other one-half to a gift to Bob. One half of these expenditures is roughly equal to the amount Bob claims as the living expenses attributable to Beverly. These living expenses may be fairly viewed as gifts to Beverly. If the vacations taken by Bob and Beverly are deducted from the $14,-075.75, Beverly is left with $10,575.75. Additionally, of the funds expended for the Las Vegas trip, $703.50 is clearly attributable to Beverly, leaving a balance of $9,872.25. Finally, Beverly bought both wedding rings and she keeps her ring. That amounts to $500 leaving a total of $9,372.25.
Bob’s version, resulting in a $3000 debt requires that we accept his recollection as *1240 to the amount of cash he received, a $1500 difference. It also requires charging Beverly living expenses and car insurance while in Vicksburg totaling $1805.75 and charging her for all of the planned Las Vegas trip as opposed to a part, a difference of $2296.50. Finally, Bob’s version does not account for the $1179.53 (her version) in assorted checks which he claims to have repaid. (See footnote 3, hereinabove.) The total of these items is $6841.78. These are items that the chancellor could have rejected resulting in a total due from Bob to Beverly of $9841.78.
We find, based on the above discussion of facts and application of law, that the $15,000 judgment is unsupported by the evidence. Viewed in the light most favorable to Beverly, the evidence supports a judgment of not more than $10,000.
IV.
Accordingly, we reverse the $15,000 judgment, affirm the remainder of the final decree in this action, and remand for entry of a judgment against Bob Melchiors for $10,000.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, SULLIVAN, PITTMAN and McRAE, JJ., concur.
DAN M. LEE, P.J., concurs in result only.
ROBERTS, J., not participating according to supreme court internal rules.

. Bob and Beverly were unable to settle on the issues of alimony and attorneys' fees. These issues were ruled on at the trial level. These rulings have not been appealed to this Court.

. Before marrying Bob, Beverly owned a home in West Allis, Wisconsin. In addition to about $3,000 in cash, Beverly testified she brought the proceeds from the sale of her home ($35,062.65) into the marriage. The sum of $40,000 was used as- a rounded figure.

. The major components of this figure are a $13,000 loan to Bob to pay off his car note and a $10,000 disbursement to Bob for a down payment on a house. In addition, Beverly noted she gave Bob $3,500 for trips to Cancún and Perdido, $1,179.53 in a series of checks endorsed to Bob and $364 cash to purchase a ticket. Finally, Beverly alleged another $3,500 paid to Bob in cash to be used to purchase a washer and dryer, wedding rings, a trip to Las Vegas and other items. She also alleged that she received and repaid Bob $1000. These transaction are a wash and are not counted in the $31,543.53.

. This amount consists of a $15,000 check from Bob, a $1000 earnest money refund check paid over to Beverly and a $1467.75 check from Bob.

. Bob's accounting notes that Beverly wrote a $10,000 check for a down payment on a home, wrote another check for $13,000 to retire Bob's car note and that Beverly brought $3,000 cash into the marriage. However, Bob’s accounting does not include any other expenditures made by Beverly during the marriage as money lent to Bob. Bob seems to contend that he received $500 less than Beverly contends for the Las Vegas trip and assorted household appliances. He also fails to included the amounts expended for the Cancún and Perdido trips, $3500, the ticket and the assorted checks endorsed to him by Beverly. As to the latter, Bob produced his bank statements, which indicated a deposit of the assorted checks, a withdrawal of $350 in cash, and a check for the balance. He contended that the check was to Beverly and that she received $300 of the cash pursuant to her agreement to give him $50. Beverly claims that the checks total $1179.53. The deposit was for $1182.53. The check, which Bob claims was payable to Beverly, is indicated in the amount of $882.53. Unfortunately for Bob, he produced *1239 no canceled check to Beverly for the amount indicated on the statement. Beverly had no recollection of this transaction and testified that the $1467.75 check from Bob covered the assorted endorsed checks.

. In Wood. v. Wood, 495 So.2d 503, 505 (Miss.1986), this Court affirmed a chancellor’s deci-' sion to accept the testimony of one party over the contradicting testimony of an opposing party as the testimony of the former party was not "inherently incredible."