626 So.2d 148 (1993)
Attorney General Mike MOORE, ex rel., BENTON COUNTY, Mississippi and the Mississippi Ethics Commission
v.
William Jackson RENICK, Former Supervisor, District 3, Benton County, Mississippi.
No. 90-CC-1263.
Supreme Court of Mississippi.
November 4, 1993.
Michael C. Moore and Larry E. Clark, Asst. Atty. Gen., Jackson, for appellant.
Roger F. Wicker, Sparks Wicker & Colburn, Tupelo, Terry L. Jordan, Philadelphia, and Wendell H. Bryan, II, Amory, for appellee.
Before DAN M. LEE, P.J., and PITTMAN and JAMES L. ROBERTS, JR., JJ.
DAN M. LEE, Presiding Justice, for the court:
This is an appeal from the Circuit Court of Benton County, wherein on March 31, 1989, the Attorney General and the Mississippi Ethics Commission ("the appellants") filed suit against William Jackson Renick ("Renick"). *149 The suit alleged that Renick had violated Section 109 of the Mississippi Constitution of 1890 and various conflict of interest laws. These allegations arose out of certain actions taken by Renick while serving on the Benton County Board of Supervisors in relation to Benton, Inc., a furniture manufacturer located in Benton County. The appellants alleged a conflict of interest on the part of Renick because Renick's trucking company, A & R Trucking, conducted substantial business with Benton, Inc.
Following extensive discovery, the appellants moved for summary judgment as did Renick. Following argument on the motions, the lower court denied the appellants' motion for summary judgment and granted Renick's motion for summary judgment on November 5, 1990. Judgment was entered on January 10, 1991. From this adverse judgment, the appellants appeal, assigning as error the following:
I. Standard of Review.
II. The trial court erred in holding that the actions of Renick did not violate Article IV, Section 109, Mississippi Constitution of 1890, and Sections 25-4-105(1) and 25-4-105(2), Mississippi Code of 1972.
III. The trial court erred in not holding that Renick violated Section 25-4-105(1), Mississippi Code of 1972.
IV. The trial court erred in holding that Section 25-4-113, Mississippi Code of 1972, requires that there be actual damages before an action will lie for recovery of pecuniary benefit.
V. The trial court erred in finding that Section 25-4-109, Mississippi Code of 1972, does not apply in this case.
VI. The trial court erred in holding that an Ethics Commission employee approved Renick's conduct in a prior telephone conversation.
VII. The trial court erred in holding that, assuming an Ethics Commission official verbally approved Renick's conduct, it constituted a waiver of the Commission's right to sue Renick for his violation.
We hold that the circuit court erred in entering summary judgment in favor of Renick. Because this case was improperly decided on summary judgment, it would be premature for this Court to address the aforementioned assignments of error as they relate to the merits. Accordingly, we reverse and remand this cause for a trial or other disposition on the merits.

FACTS
Renick was a member of the Benton County Board of Supervisors during the years 1984-1988. In 1984, the Appalachian Regional Commission Office in Tupelo, Mississippi, advised the Chancery Clerk in Ashland, Mississippi, of a possible industrial prospect for the Benton County Industrial Park. This effort was initiated by Mr. Ken Hurt, then Executive Director of the Appalachian Regional Commission in Tupelo, and culminated with a series of negotiations that led to the location of the corporation in the Industrial Park.
During the years 1984 through 1987, the Board, including Renick, passed many orders and resolutions to provide financial, as well as other, support for the industry in question  Benton, Inc., a private furniture manufacturer. These orders, resolutions, and other actions involving Renick are the basis of the alleged ethical violations under Section 109 of the Mississippi Constitution.
In an effort to aid Benton, Inc. in beginning its manufacturing operations, the first action taken by the Benton County Board of Supervisors was the passage of a resolution to begin the application process for a $150,000.00 Community Development Block Grant from the Governor's Office of Federal/State Programs. The initial resolution to set a public hearing on the application was passed on December 14, 1984. Subsequent to the public hearing, the Board passed a resolution to make an application for the grant on December 28, 1984. Renick seconded and voted for the adoption of these resolutions.
On April 1, 1985, Renick introduced and voted for a resolution of the Board conveying five acres of land in the Industrial Park to Benton, Inc. on which to construct its operating facility. On April 2, April 19, May 6, and *150 June 3, all in 1985, Renick introduced, moved the adoption of and voted for resolutions of the Board to issue an industrial revenue note in the amount of $187,000.00. The proceeds of this note were used to build a facility for Benton, Inc. to house its manufacturing operations.
According to Renick, on September 16, 1985, he called the Mississippi Ethics Commission and talked with Assistant Director Charles Brown about the legality of his doing business with Benton, Inc. This inquiry was made as the result of suggestions by Andy Morris, a vice-president of Benton, Inc., to Renick that Renick and David Akin form a trucking company and haul furniture for Benton, Inc. Although this date does not appear to be definitely established by the record, the record does indicate that this conversation took place sometime between April 1, 1985, and January 31, 1986, and that the date was alleged to be September 16, 1985. The exact substance of this conversation is disputed by the parties. Renick claims that he presented the facts to the Ethics Commission official and that he received permission to conduct business with Benton Inc. The appellants claim the assistant director responded to another totally different factual situation and question posed to him by Renick and advised Renick that no opinion of his would be official and further instructed Renick on how to obtain an official opinion.
On November 4, 1985, Renick offered, moved the adoption of and voted for a resolution of the Board agreeing to assist Benton, Inc. in obtaining a $90,000.00 revolving loan from the Community Development Block Grant Program for the purpose of equipping Benton, Inc.'s facility. On February 26, 1986, Renick seconded and voted for a Board order amending this November 4, 1985, resolution to assist in obtaining the $90,000.00 revolving loan for Benton, Inc.
On January 31, 1986, Renick and Akin formed a partnership called A & R Trucking. This business was formed by the two men with the expectation of contracting to haul furniture manufactured by Benton, Inc. On that same date, A & R Trucking contracted with Benton, Inc. to perform hauling services. The contract was signed for A & R Trucking by Renick. Subsequent to the signing of the contract, A & R Trucking began transporting furniture for Benton, Inc. As a result of this work, A & R Trucking was paid the sum of $88,776.13 by Benton, Inc. between February 7, 1986, the date of the first payment received by A & R Trucking, and April 27, 1987.
On February 26, 1986, the same day that the Board amended the resolution concerning the $90,000.00 revolving loan, Renick introduced, recommended adoption of, and voted for a Board resolution authorizing the Board president to execute an agreement between the Board and Benton, Inc., which secured a loan of $25,000.00 for Benton, Inc. from the Tennessee Valley Authority. Renick also personally assisted Benton, Inc. in obtaining through the Board, an $18,000.00 award from the Appalachian Regional Community in Tupelo.
Renick introduced, moved the adoption of and voted for a March 17, 1987, Board resolution requesting additional funding through the Governor's Office of Federal/State Programs for Benton, Inc., in the amount of $100,000.00. On March 27, 1987, Renick seconded a motion to pass and voted for a Board resolution agreeing to execute a promissory note and loan agreement in favor of the First National Bank of Ashland in the amount of $50,000.00 to secure additional funds for Benton, Inc.
The present action was initiated by the appellants on March 31, 1989. Summary judgment was entered in favor of Renick on January 10, 1991, and this appeal followed.

LAW
We begin by setting forth our scope of review. In Mississippi Ethics Com'n v. Aseme, 583 So.2d 955 (Miss. 1991), the Ethics Commission brought suit against a physician for an alleged violation of Section 109 of the Mississippi Constitution and Miss. Code Ann. § 25-4-105(2). Summary judgment was granted in favor of the physician. In reviewing the grant of summary judgment, we stated:

*151 We employ a de novo standard in reviewing a lower court's grant of a summary judgment motion. Cossitt v. Federated Guaranty Mut. Ins. Co., 541 So.2d 436, 438 (Miss. 1989); Short v. Columbus Rubber & Gasket Co., Inc., 535 So.2d 61, 63 (Miss. 1988). Thus, we use the same standard that was used in the trial court. 10 Wright, Miller & Kane, Federal Practice and Procedure § 2716 (1983 and Supp. 1988). We must review all evidentiary matters before us in the record: affidavits, depositions, admissions, interrogatories, etc. The evidence must be viewed in the light most favorable to the nonmoving party, who is to be given the benefit of every reasonable doubt. Smith v. Sanders, 485 So.2d 1051, 1054 (Miss. 1986); Dennis v. Searle, 457 So.2d 941, 944 (Miss. 1984). The burden of demonstrating that no genuine issue of fact exists is on the movant. Short v. Columbus Rubber and Gasket Co., Inc., 535 So.2d 61, 63-64 (Miss. 1988). A motion for summary judgment lies only when there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. M.R.C.P. 56(c). The Court does not try issues on a rule 56 motion, it only determines whether there are issues to be tried. In reaching this determination, the Court examines affidavits and other evidence to determine whether a triable issue exists, rather than for the purpose of resolving that issue. Comment, M.R.C.P. 56.
Aseme, 583 So.2d at 957.
Our scope of review is limited to a determination of whether there existed material issues of fact at the trial level. In reviewing the record, we are left with the inescapable conclusion that this action was improperly decided via summary judgment.

The telephone conversation.
The lower court found that Renick had previously talked to the assistant director of the Ethics Commission by telephone and obtained his verbal approval of Renick's business dealings with Benton, Inc., stating:
It has been brought to the attention of the Court by the Defendant's Answer, that is his affirmative defenses set out in his Answer, and by his Answers to Interrogatories that prior to him and Mr. Akin taking the action they did with the manufacturing company, he contacted the Mississippi Ethics Commission and talked with a high official there. The official is named in the pleadings. It has been brought out in oral argument that this person was a high official in the Mississippi Ethics Commission at that time.
The contention is strong that the Mississippi Ethics Commission approved everything that the Defendant did prior to him doing so. If this had been able to be refuted, surely the Court would have an affidavit from that person before it or some other evidence or pleading that would refute what now before the Court is undisputed.
We have consistently held that we will not disturb a trial judge's findings of fact unless the trial judge was manifestly wrong, clearly erroneous, or applied an erroneous legal standard. Omnibank of Mantee v. United Southern Bank, 607 So.2d 76 (Miss. 1992); Melchiors v. Melchiors, 607 So.2d 1237 (Miss. 1992); Walters v. Patterson, 531 So.2d 581 (Miss. 1988). Where the trial judge's findings of fact are supported by substantial, credible evidence in the record, this Court will not reverse. Allied Steel Corp. v. Cooper, 607 So.2d 113 (Miss. 1992); Crowe v. Smith, 603 So.2d 301 (Miss. 1992). However, if the record is devoid of such credible evidence and the trial judge's ruling is against the overwhelming weight of the evidence, we will not hesitate to reverse.
In the case at bar, the evidence reveals that there is no dispute as to the fact that a conversation did take place between Renick and a high-ranking official with the Mississippi Ethics Commission. The appellants even admit that this conversation led Renick to believe his actions were proper. However, the appellants contend that any permission given by the Ethics Commission official was in response to an entirely different factual scenario and further contend that the official informed Renick that this oral opinion was not binding and that Renick *152 needed to get a written opinion, a fact Renick denies.
Based on the admissions of the appellants in response to discovery propounded by Renick and on the affirmative defenses set forth in Renick's answer, the lower court found that everything done by Renick had been cleared through the Ethics Commission. However, a review of the record reveals that the only evidence supporting such a conclusion is the affirmative defense set forth in Renick's answer and the following request for admission by Renick and the appellants' response:

REQUEST NO. 1: That during the month of March, 1989, in the office of the Honorable Attorney General of the State of Mississippi, in the presence of Attorney General Mike Moore, Assistant Attorney General Larry Clark, Attorney Roger Wicker, and Attorney Terry L. Jordan, that the Defendant, William Jackson Renick, offered unto the office of the Attorney General, through his attorneys, to subject himself to a "lie detector test," and that the following provisions were to apply:
a. That William Jackson Renick had stated that on September 16, 1985, that he had a telephone conversation with Charles Brown, then the Assistant Ethics Commission Director, and that he then received a verbal clearance to participate in the business ventures as set forth in the complaint.

RESPONSE: The Plaintiffs admit to the March, 1989, meeting, to its participants, to the offer by the Defendant to take a lie detector test and to the Defendant's allegation that a prior conversation with Charles Brown, former Ethics Commission Assistant Director, had caused him to believe that his conduct was permissible. The Plaintiffs deny any remaining requests for admission contained within Request No. 1a.
b. That the Attorney General of the State of Mississippi informed persons present that Charles Brown admitted that he had received such a telephone call and had advised the Defendant Renick, "I don't see any problems with it," and that the only statements not in agreement is that it is the contention of Charles Brown that he further said, "you need to get a written opinion," to which the Defendant Renick, states as untrue.

RESPONSE: The Plaintiffs deny the specific wording quoted by the Defendant in this Request and admit that Charles Brown, without benefit of any other facts, tentatively approved the Defendant's proposal to do business with a firm located in the County Industrial Park, also advised the Defendant's that his was not an official opinion and further explained to the Defendant the statutory procedure for obtaining such an opinion. Any remaining requests for admission contained within Request No. 1b are denied.
The record is devoid of any other evidence supporting the lower court's conclusion that Renick cleared his actions with the Ethics Commission. The lower court did say that based on oral argument the contention was strong that the official in question was a high-ranking official with the Ethics Commission and approved all of Renick's actions. However, a transcript of this oral argument is not part of the record and the fact that Renick talked to a high-ranking official with the Ethics Commission is not disputed by any party. However, there is no other evidence before this Court supporting the lower court's finding of fact. Therefore, we find that the lower court erred in concluding as a matter of fact that Renick cleared his conduct with the Ethics Commission before taking any action.

Waiver.
As noted above, the lower court found that Renick's actions were cleared by the Ethics Commission. As such, the lower court found that this clearance by the Ethics Commission operated as a waiver of the appellants' right to sue Renick for his alleged violation of the law, stating:
The Plaintiffs [the appellants herein] argue that even though the high official of the Ethics Commission agreed to the action of the Defendant, that this did not effect a waiver of the Commission's claim as a Plaintiff in this lawsuit. The Court is constrained to disagree with that contention. *153 Certainly, any elected official of this State should be able to proceed in his business affairs, or affairs in regard to his official position, on the advice of a high official of the Mississippi Ethics Commission. Of course, I make that determination after considering that the Commission itself is a Plaintiff in this lawsuit contending that the Defendant violated what it permitted.
Renick claims that the lower court did not err in holding the appellants estopped to pursue the suit due to the fact that had he not obtained permission from the Ethics Commission, then this suit would never have occurred. While it is not entirely clear, it appears that Renick argues that as he relied to his detriment on the Ethics Commission's opinion, then the appellants are equitably estopped from suing him for an alleged ethical violation.
We encountered a similar situation in Suggs v. Town of Caledonia, 470 So.2d 1055 (Miss. 1985). In Suggs, two store-owners, Suggs and Killebrew, sued the Town of Caledonia, seeking to enjoin the town from enforcing a municipal ordinance regarding the sale of beer. The chancellor held the town equitably estopped from enforcing the ordinance against Suggs but held that the ordinance could be enforced as to Killebrew. While both parties appealed, we are concerned only with our opinion in that case insofar as it pertained to Killebrew. Killebrew argued on appeal to this Court that he had relied on the representations of the Mayor of Caledonia in locating his store where he did. Therefore, Killebrew argued that the doctrine of equitable estoppel was applicable, the factors being:
1. belief and reliance on some representation;
2. change of position, as a result thereof;
3. detriment or prejudice caused by the change of position.
Suggs, 470 So.2d at 1057.
We rejected Killebrew's argument and affirmed the decision of the lower court, stating:
Because a municipality may act only through its minutes, ordinarily the unauthorized acts of one of its officials does not estop a municipality from acting in its governmental capacity. (citations omitted). Both Mayor Willis and Tom Wiggins, an alderman and vice-mayor, testified that Willis had been given no authority from the town board of aldermen to single handedly grant exemptions from the town zoning ordinances. Therefore the chancellor correctly ruled that Killebrew could not rely on the mayor's comment to him that the sale of beer was only required to be a reasonable distance away from churches and that in the mayor's opinion Killebrew's business was such a distance away. Because Killebrew could not validly rely on the mayor's comments we agree with the chancellor that there is no factual foundation to support the application of the doctrine of estoppel as to Killebrew.
Suggs, 470 So.2d at 1057.
Our decision in Suggs is one in a line of cases wherein this Court has held that the state is not estopped from filing suit due to the unauthorized acts of one of its officials. See also Board of Educ. of Lamar County v. Hudson, 585 So.2d 683 (Miss. 1991); Hill v. Thompson, 564 So.2d 1 (Miss. 1989); Oktibbeha County Bd. of Educ. v. Town of Sturgis, Miss., 531 So.2d 585 (Miss. 1988); Robert E. Ratliff Co., Inc. v. Mississippi State Highway Commission, 400 So.2d 1211 (Miss. 1981) (verbal statement by employee of public body cannot work estoppel as against state or any other political subdivision). This principle is relevant due to the fact that the appellants claim that any oral permission given by the Ethics Commission official was unauthorized and as such cannot estop the State in this action.
In support of its argument that the official's actions were unauthorized, the appellants cite the laws governing the Ethics Commission during the time Renick was in office, 1984-1988. Under these laws, the Ethics Commission could not give oral advisory opinions and could only issue advisory opinions on matters involving economic interests. This power was set forth in Miss. Code Ann. § 25-4-17(j), which states in relevant part:
The commission shall, in addition to any other duties prescribed by law:

*154 (j) Issue advisory opinions, upon written request by any individual required to file a statement of economic interest under the provisions of Section 25-4-25, pertaining to the content of the statement of economic interest which such individual is required to file under the provisions of section 25-4-27.
According to the appellants, it was not until 1989 that the Ethics Commission was statutorily empowered to issue advisory opinions on a host of conflict of interest situations. The Ethics Commission was empowered to render such opinions with the addition of Miss. Code Ann. § 25-4-17(i) which reads in relevant part:
The commission shall, in addition to any other duties prescribed by law:
(i) Have the authority, in its discretion, to issue advisory opinions with regard to any of such standards of conduct set forth in Article 3, Chapter 4, Title 25, Mississippi Code of 1972. When any public official requests in writing such an advisory opinion and has stated all the facts to govern such opinion, and the commission has prepared and delivered such opinion with reference thereto, there shall be no civil or criminal liability accruing to or against any such public official who, in good faith, follows the direction of such opinion and acts in accordance therewith unless a court of competent jurisdiction, after a full hearing, shall judicially declare that such opinion is manifestly wrong and without any substantial support.
The appellants claim that "in 1984, 1985, 1986, and 1987, the Ethics Commission had absolutely no authority to issue advisory opinions on the conflict of interest laws which afforded any legal protection to the requestor whatsoever." Renick has cited no statutory authority for his position and we have found none. Accordingly, we cannot sustain the grant of summary judgment based on the theory of waiver.
Therefore, the granting of summary judgment for appellee was improper and must be reversed and the cause remanded. Upon remand, we call the trial court's attention to Miss. Code Ann. § 25-4-107(2).

Miss. Code Ann. § 25-4-107.
Miss. Code Ann. § 25-4-107 provides:
Complaints; where brought; removal; initiated by; defendant's right to jury trial.
(1) Any complaint for a violation of this article shall be brought in the circuit court of the county in which the violation occurred; provided, however, that upon the motion of the defendant such action shall be removed to the county in which the defendant resides. Any such complaint may be initiated only by the Mississippi Ethics Commission or the district attorney of the county in which the violation occurred.
(2) The defendant in any trial for a violation of this article shall have the right to a trial by jury; provided, however, that such defendant may, upon proper motion, waive his right to a trial by jury. A unanimous verdict of the jury shall be required for a finding of a violation of this article.
Under Section 109 of the Mississippi Constitution, the attorney general has the right to have a court declare contracts made in violation thereof void and to recover all sums paid under said void contracts. As noted above, Renick was charged with violating this section. However, the appellants also charged Renick with a violation of several of the various ethics laws, codified in Miss. Code Ann. § 25-4-101 et seq. These laws govern the conduct of public officials, detailing actions which are proscribed by law and which constitute a conflict of interest. Additionally, these statutes detail the powers and remedies available to the State when a public official is accused of an ethics violation as well as the protections afforded said public official by the ethics statutes. Many of these protections, as set forth in Miss. Code Ann. § 25-4-107, are beyond those ordinarily afforded a defendant in an ordinary civil action.
One final point concerns our decisions in Waller v. Moore ex rel. Quitman County, 604 So.2d 265 (Miss. 1992) and Towner v. Moore ex rel. Sch. Dist., 604 So.2d 1093 (Miss. 1992). In both Waller and Towner, summary judgment was entered against the defendants in violation of Miss. Code Ann. § 25-4-107(2). *155 In Waller, the issue was not raised on appeal. However, in Towner, the appellants raised the issue on appeal. We held in that case that Miss. Code Ann. § 25-4-107(2) did not alter our summary judgment procedure. We do not overrule Waller or Towner as they are distinguishable upon their facts. Therefore, we reverse and remand for a trial or other disposition on the merits of this cause.
REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, JR., and SMITH, JJ., concur.