IN THE SUPREME COURT OF MISSISSIPPI
NO. 98-CA-00236-SCT

*HALBERT E. DOCKINS, JR.*

*v.*

*MICHAEL S. ALLRED, JOHN I. DONALDSON AND ALLRED & DONALDSON, A PARTNERSHIP*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/18/1997 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ANITA M. STAMPS |
| ATTORNEYS FOR APPELLEES: | KENNETH A. RUTHERFORD |
| | JAMES P. COTHREN |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 10/28/1999 |
| MOTION FOR REHEARING FILED: | 12/09/99; denied 2/17/2000 |
| MANDATE ISSUED: | 2/24/2000 |

## EN BANC.

## MILLS, JUSTICE, FOR THE COURT:

### STATEMENT OF THE CASE

¶1. This case involves a controversy over the proper allocation of fees between two attorneys, Halbert E. Dockins, Jr. and Michael S. Allred, associated for the purpose of bringing one particular lawsuit to a successful conclusion. Their fees were based on an hourly rate in addition to a contingent fee. The attorneys were unable to come to an agreement concerning these fees, and on July 19, 1996, his partner, John I. Donaldson, and their law firm partnership, Allred & Donaldson, (collectively Allred), filed suit in the Hinds County Circuit Court requesting an accounting and a declaratory judgment.[1] On November 7, 1996, Allred filed a motion for summary judgment with the court. Judgment was entered in favor of Allred on July 18, 1997. It is from that judgment that Halbert E. Dockins, Jr. appeals to this Court.

### STATEMENT OF THE FACTS

¶2. Dockins, Michael Cavanaugh and Allred associated in December, 1993 for the purpose of prosecuting a lawsuit styled and numbered *Jeremiah J. O'Keefe, Sr., et al. v. Loewen Group, Inc. et al.*, No. 91-677-423, in the Circuit Court of the First Judicial District of Hinds County, Mississippi (the *O'Keefe* case). They worked together with additional attorneys and were successful in securing a substantial judgment for their client, Jerry O'Keefe. The fee agreement, which had been memorialized in three separate writings, was

interpreted differently by Allred and Dockins and has become the subject of this lawsuit filed by Allred and his law firm.

¶3. The first writing was a document titled "Attorneys' Fee Agreement" which specified how the attorneys would be paid. This document detailed the fee between O'Keefe and the attorneys *as a group*. The attorneys were to receive "$75.00 per hour in hourly fees plus a contingent fee specified herein." The contingent fee was to be twenty-five percent of the net-recovery of the lawsuit. On July 21, 1995, the agreement was amended to provide for the reduction of the contingent fee to twenty percent, instead of the earlier twenty-five percent. There is no disagreement concerning this agreement between the attorneys *as a group* and O'Keefe.

¶4. The second writing was a letter from Allred dated November 30, 1993, and addressed to the other two attorneys associated on this case, Dockins and Cavanaugh. In this letter Allred specified exactly how the fee from the *O'Keefe* suit was to be divided between the attorneys. He enclosed with this letter the retainer letter which was to be sent to O'Keefe. This retainer letter was the third writing, which will be discussed *infra*. The letter to Dockins and Cavanaugh read as follows:

> Dear Hal and Mike:
>
> I enclose the original and three copies of a Retainer Letter and Assignment Agreement.
>
> We have agreed, with respect to our contingent fee under the Assignment: In the representation of the Plaintiffs, we will divide the contingency fee to be earned, if any, twenty percent (20%) to Michael F. Cavanaugh; forty percent (40%) to Halbert E. Dockins, Jr., and forty percent (40%) to Michael S. Allred; provided, however, that as between Dockins and Allred, if either of them does a disproportionate amount of the work on an hourly basis, the contingent fee will be equitably adjusted in proportion to time spent, but not beyond a 75%-25% split between the two firms. Cavanaugh will have twenty percent (20%) without adjustment based on time.
>
> If you agree, please sign this letter to evidence our agreement.

This letter was signed by Cavanaugh and Dockins on January 5, 1994.

¶5. The retainer letter sent on Allred & Donaldson letterhead to O'Keefe and dated December 1, 1993, included a section entitled "Association". The pertinent portion of this section stated the following:

> In this litigation, the three of us are associated together. Nevertheless, we will each bill all expenses advanced and hourly fees separately. We will divide the contingent portion of the fees to be earned hereunder on this ratio: twenty percent (20%) to Michael F. Cavanaugh; forty percent (40%) to Halbert E. Dockins, Jr., and forty percent (40%) to Michael S. Allred, except that as between Halbert E. Dockins, Jr. and Michael S. Allred, if the hours worked by each of them and their associated lawyers vary substantially from equal amounts of time, the contingent fees will be equitably adjusted between them to a pro rata share based upon time committed, provided that neither of them shall receive less than twenty-five percent (25%) of the contingent fee even though the ratio of time committed would result in less.

¶6. This letter was again sent out on March 1, 1994, with the only changes being made to the date of the letter and to a paragraph which does not concern fees between attorneys. The letter was again signed by

Allred, Cavanaugh and Dockins.

¶7. The *O'Keefe* case was settled, while pending appeal to this Court, for the sum of $50 million dollars in cash plus 1.5 million shares of Loewen Corporation stock, and a promissory note in the amount of $4 million per year for twenty (20) years without interest. At the conclusion of the case and settlement, and at the request of Jimmy O'Keefe, Jimmy Burkes of the Firm of Haddox, Reid, Burkes & Calhoun, Certified Public Accountants, and Dr. Hugh James Parker, Dean of the Else School of Management at Millsaps College, performed an audit of all bills submitted to, accepted and paid by the clients during the *O'Keefe* lawsuit from inception through December 31, 1995. The audit took the hours submitted by each of the attorneys and determined their percentage contribution to the work on the *O'Keefe* case. The "Accountant's Statement" showed the following:

> I have examined the above and foregoing Accounting of Fee Division between Michael S. Allred and Halbert E. Dockins, Jr., including:
>
> 1. The various attorneys' Retainer and Fee Assignment Agreements in effect;
>
> 2. The Settlement Disbursement and Recapitulation Agreement to be executed;
>
> 3. The detailed fee bills submitted by the Dockins firm and the Allred firm to the clients pursuant to the retainer, assuming that all bills submitted to and paid by the clients were proper and due for payment and, therefore, includable within the calculations;
>
> 4. Summaries of the billing records prepared by Jimmy E. Burkes, CPA; and
>
> 5. All calculations and extensions contained within the Settlement Disbursement and Recapitulation Agreement and within the Accounting of Fee Division Between Michael S. Allred and Halbert E. Dockins, Jr.
>
> Based upon the documents examined, it is my opinion that, under the agreement in question, based upon the billing records, the pro rata division of fees between and among Messrs. Cavanaugh, Dockins and Allred is:
>
> Cavanaugh: 20.0% of 20% = 4.0%[2]
>
> Dockins: 27.14% of 16% = 4.34 %
>
> Allred: 72.86% of 16% = 11.66%
>
> DATED: February 4, 1996

¶8. The audit also showed that Dockins submitted 1,703.5 lawyer hours and 1,105.5 paralegal hours for payment through December 1995, while Allred submitted 4,572.9 lawyers hours and 3,722.1 paralegal hours worked through the same date (it was noted that Allred did an additional, substantial amount of work in January - February, 1996, which was not included in the calculation). The work performed by the Allred firm was broken down further to show the hours actually billed by Allred and the hours billed by other lawyers in the Allred firm as follows:

> Allred: 2,240.3 Hours

Other Lawyers: 2,332.6 Hours

Legal Assistants: 3,722.1 Hours

TOTAL: 8,295.0 Hours.

It was shown that the 1,703.5 lawyer hours submitted by Dockins were all performed by Dockins himself. Dockins took exception to the final results of the accounting and therefore, he and Allred could not come to an agreement as to how the fee should be distributed.

¶9. As a result of the disagreement, Allred filed a complaint with the Hinds County Circuit Court requesting first, an accounting "calculating and declaring the net amount of cash, stock, interest, dividends and other assets held in escrow for the benefit of the Plaintiffs and Defendant Dockins and the other parties to the Escrow Agreement, net of any expenses or fees charged against said funds pro rata." Secondly, Allred prayed that the assets held in escrow be interpleaded and paid into the registry of the Court to be held for payment pursuant to order of the Court. Third, Allred requested a declaratory judgment praying that he, and the other plaintiffs, be awarded seventy-five percent of the fee to be split between Dockins and himself. Additionally, he claimed that the contracts between the parties are enforceable as to Dockins and therefore, Allred, et al. are entitled to seventy-five percent of the sixteen percent fee to be divided between them.

¶10. The Hinds County Circuit Court awarded summary judgment to Allred, Donaldson, and Allred & Donaldson, a Partnership, in the amount of seventy-one percent (71%) or eleven and 45/100 percent (11.45%) of the 16% assets held in escrow for the parties jointly by Peoples Bank Biloxi. Dockins was awarded judgment in the amount of twenty-eight and 47/100 percent (28.47%) or four and 55/100 percent (4.55%) of the 16%. Counterclaims filed by Dockins alleging breach of contract, fraud and intentional and negligent infliction of emotional distress were dismissed, as well. From that judgment Dockins now appeals to this Court.

## STANDARD OF REVIEW

¶11. When reviewing a lower court's decision to grant summary judgment we employ a *de novo* standard of review. ***Moore ex rel. Benton County v. Renick***, 626 So.2d 148, 151 (Miss.1993). In other words, we use the same standard applied by the trial court. ***Renick***, 626 So.2d at 151. *De novo* review of a case requires that we examine all evidence in the record in a light most favorable to the non-moving party. ***Id.*** (*citing **Smith v. Sanders***, 485 So.2d 1051, 1054 (Miss.1986)). Mississippi Rule of Civil Procedure 56(c) dictates that summary judgment is only granted when the moving party illustrates that there is no genuine issue of material fact and he is entitled to judgment as a matter of law. Thus, when we review a Rule 56(c) motion that has been granted, we do not rule on the issues, but rather we determine whether there are issues to be tried. ***Renick***, 626 So.2d at 151.

## ANALYSIS

### I. WHETHER THE TRIAL COURT COMMITTED ERROR BY SUMMARILY DISMISSING THE CONTRACT DISPUTE OF THE PARTIES THROUGH SUMMARY JUDGMENT.

¶12. Dockins asserts that there are factual disputes as to the number of hours actually worked by Allred & Donaldson and himself. He argues that he established that he worked a total of 2,711.75 hours or more.

However, Dockins provides no documentation for these additional hours that he purports to have worked, other than a letter written by him to Allred wherein he states that he worked many hours without billing O'Keefe in order to avoid "placing [O'Keefe] in further financial peril". This statement in his letter to Allred and his sworn testimony that he worked 2,711.75 hours is the only evidence in the record that would support his contentions. The only credible evidence of time committed to the *O'Keefe* case is the bills submitted to and paid by the clients. While Dockins is to be commended for his generosity to his client, we cannot and will not award attorney fees based on "unbilled hours" claimed by Dockins after his percentage of the fee was determined to be less than he had hoped for.

¶13. Additionally, he contends that based on the original agreement date of November 30, 1993, Allred & Donaldson worked a total of only 2, 240.3 hours or less. However, 2,240.3 is the number of hours that Allred, himself, worked on the case. It is Dockins's assertion that Allred & Donaldson should be limited to that amount. He argues that the agreement was that the percentage would be determined by the number of hours worked by himself and Allred individually, and the number of hours worked by the associates of their respective firms would not be included in the calculation. Therefore, he claims that he is entitled to at least half of the 16% fee that was to be divided between Allred and himself. There is no evidence in the record to support his argument. The retainer letter specifically states that the hours spent on the *O'Keefe* case by the associates would be included in the calculation of percentages. This letter was signed by Dockins once on December 1, 1993, and again, as amended on March 3, 1994. In addition to the language of the retainer letter, the letter which Dockins refers to as the "initial agreement," the November 30, 1993 letter, contains the following language: " . . .the contingent fee will be equitably adjusted in proportion to time spent, but not beyond a 75%-25% split *between the two firms*." The letters formed a clear and unambiguous contract that specified that the work of the associates of the firms would be included in the calculation of the hours committed to the case by each attorney.

¶14. In addition, Dockins argues that the contractual agreement is ambiguous due to the language, "vary substantially from equal amounts of work". However, it is clear that any interpretation of the words "vary substantially" would show that 4,255.1 hours worked varies substantially from 1,693.5 hours.

¶15. Dockins also claims that Allred included time billed to *O'Keefe* prior to the November 30, 1993, agreement in his calculation of time used to determine the percentage of his fee pursuant to the contingent agreement. While this assertion is true, Dockins fails to note that the trial court took this fact into consideration when ruling on the motion for summary judgment and reduced Allred's final calculation of hours worked by the amount of hours showing prior to the November 30, 1993, date of the contract. Dockins presents no issue of triable fact under this assertion of error. This issue is without merit.

> **II. WHETHER, BASED UPON THE FRAUDULENT AND DECEITFUL ACTS OF THE PLAINTIFFS, THE DEFENDANT SHOULD NOT BE BOUND TO ANY AGREEMENT WHICH WAS NOT ORIGINALLY INTENDED BY THE PARTIES.**

> **III. WHETHER DEFENDANT, DOCKINS'S COUNTERCLAIMS PRECLUDE SUMMARY JUDGMENT.**

¶16. Dockins asserts that Allred "substituted slightly different language into the middle of the agreements" and did not discuss the changes made to the provisions of the Professional Undertaking and Association Agreements. He claims that Allred "fraudulently and deceitfully slipped additional language into the fee allocation provisions (titled "Association") of these agreements, while Dockins was under the impression

that these were professional association and undertaking agreements with their client whereby the provisions would incorporate the prior fee allocation agreements made between Allred, Cavanaugh and Dockins via the November 30, 1993 Letter Agreement." The complained of language was as follows:

> Dear Hal and Mike:
>
> I enclose the original and three copies of a Retainer Letter and Assignment Agreement.
>
> We have agreed, with respect to our contingent fee under the Assignment: In the representation of the Plaintiffs, we will divide the contingency fee to be earned, if any, twenty percent (20%) to Michael F. Cavanaugh; forty percent (40%) to Halbert E. Dockins, Jr., and forty percent (40%) to Michael S. Allred; provided, however, that as between Dockins and Allred, if either of them does a disproportionate amount of the work on an hourly basis, the contingent fee will be equitably adjusted in proportion to time spent, but not beyond a 75%-25% split between the two firms. Cavanaugh will have twenty percent (20%) without adjustment based on time.
>
> If you agree, please sign this letter to evidence our agreement.

As stated, the retainer letter to O'Keefe was included as an enclosure with this "initial agreement". This letter to the other two attorneys simply restates what is carefully laid out for them in the retainer letter to O'Keefe. The retainer letter stated as follows:

> In this litigation, the three of us are associated together. Nevertheless, we will each bill all expenses advanced and hourly fees separately. We will divide the contingent portion of the fees to be earned hereunder on this ratio: twenty percent (20%) to Michael F. Cavanaugh; forty percent (40%) to Halbert E. Dockins, Jr., and forty percent (40%) to Michael S. Allred, except that as between Halbert E. Dockins, Jr. and Michael S. Allred, if the hours worked by each of them *and their associated lawyers* vary substantially from equal amounts of time, the contingent fees will be equitably adjusted between them to a pro rata share based upon time committed, provided that neither of them shall receive less than twenty-five percent (25%) of the contingent fee even though the ratio of time committed would result in less.

All three attorneys signed the "initial" letter and this retainer letter with the "and their associated lawyers" language. However, Dockins claims that he did not know that Allred had changed the language from the original letter to include this language concerning the "associated lawyers".

¶17. Although we find no evidence in the record of fraud or deceit, had Allred "slipped in" additional language as Dockins claims, Dockins cannot assert that he did not have notice of what was in the agreement or that he was surprised by the different language when he signed the agreement, not once, but twice. The trial court was correct in finding that "Dockins demonstrated a course of conduct whereby he accepted the terms of the attorneys' fee contract as binding upon him and entered into a definite and unequivocal course of conduct disclosing that he acceded and assented to the contract and his conduct constituted an acceptance and ratification of the contract which precludes a claim of fraud. *Edwards v. Wurster Oil Co., Inc.*, 688 So. 2d 772 (Miss. 1997)." Therefore, this issue is without merit. Having found no merit to any of the assignments of error presented to this Court by Dockins, we affirm the judgment of the trial court.

¶18. **AFFIRMED.**

**PRATHER, C.J., PITTMAN, P.J., McRAE AND SMITH, JJ., CONCUR. COBB, J., CONCURS IN PART. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J., AND COBB, J. WALLER, J., NOT PARTICIPATING.**

BANKS, JUSTICE, DISSENTING:

¶19. In my view, the issue of whether and to what extent Dockins should be given credit for unbilled hours is a jury question. Resolution of that issue affects not only the question of whether the work was substantially proportionate, but also the pro rata distribution of fees should it be determined that, even with those hours, there was a substantial difference in the amount of time worked between the two law firms. Thus, I respectfully dissent.

¶20. The majority states that "[t]he only credible evidence of time committed to the O'Keefe case is the bills submitted to and paid by the clients." I disagree. Clearly Dockins and members of his firm are qualified witnesses with firsthand knowledge as to the hours worked. The contract clearly says "hours worked" not billed. In my view, the credibility of their testimony is a determination to be made by a jury. *Jackson v. Griffin*, 390 So. 2d 287, 289 (Miss. 1980).

¶21. I agree with the majority that 4,255.1 hours worked compared to 1,693.5 hours is a substantial difference within the meaning of the contract. Even, if Dockins is allowed to present evidence concerning the hours he worked, Dockins, it appears, would claim to have worked 2,711.5 hours.[3] If a jury had accepted this evidence as true, in my view 4,255.1 hours compared to 2,711.5 is also a substantial difference within the meaning of the contract as, a matter of law. That of course is based upon an assumption that upon trial the 4,255.1 would be accepted or directed as the true measure of the Allred firm work. Viewed from the perspective of Dockins's billed hours, Allred and his associates worked over than fifty percent (50%) more. Put differently, Dockins's time, billed and unbilled, was more than thirty-three percent (33%) less than Allred's. From either perspective, I agree that such a difference is substantial. Even so, assuming an eventual finding of a substantial difference, in determining the pro rata division, the factual dispute regarding Dockins's unbilled time, as to whether it should be counted and if so, how much should be counted, must be resolved by the proper finder of fact, a jury.

¶22. The majority states "we cannot and will not award attorney fees based on 'unbilled hours' claimed by Dockins . . . ." This is in fact a contract dispute, not an award of fees by this Court. Nevertheless, we have awarded attorney fees in the past without depending solely upon whether time was billed to the client or even documented by contemporaneous time records. *Mauck v. Columbus Hotel Co.*, No. 97-CA-00114-SCT, 1999 WL 649653, at *11 (Miss. Aug. 26, 1999). *See also Cole v. Tuttle,* 462 F. Supp. 1016, 1019 (N.D. Miss. 1978) ("An allowance of fees should not be denied or diminished because plaintiffs' attorneys were employed or funded by a civil rights organization and/or tax exempt foundation or because the attorneys do not exact a fee from plaintiffs. *Thompson v. Madison County Board of Education*, 496 F.2d 682, 689 (5th Cir. 1974); *Fairley v. Patterson*, 493 F.2d 598 (5th Cir. 1974)."). Our task here is to see that the contract is properly construed. Nothing in the contract suggests that, as a matter of law, hours of time properly billable under prevailing standards of practice must be billed in order to be considered in the equation of time worked as between Allred and Dockins. The question is whether Dockins had additional hours which were "billable" -- not whether he in fact billed them.

¶23. For the foregoing reasons, I would reverse the summary judgment granted by the trial court and remand this case to that court for a trial.

## SULLIVAN, P.J., AND COBB, J., JOIN THIS OPINION.

1. Also a request for interpleader was made, as well as the assertion of contract claims, a request for arbitration or mediation, and for appointment of a master.

2. The percentage figures were arrived at by taking the percentage allotted to each attorney as it applied to the contingent percentage to be divided by the attorneys (20%). Therefore, 4% equals Cavanaugh's share of 20%, 16% equals the percentage to be divided between Dockins and Allred according to amount of time spent by each.

3. This includes 229 hours which appear to be duplicative. Dockins maintains that this, too, is a fact issue. Whether it remains so, the 789 or so hours clearly would be.