FIRST INVESTORS CORPORATION; and Liberty Mutual Insurance Company as Subrogee of First Investors Corporation, Plaintiffs,

v.

CITIZENS BANK, INC., t/a Citizens Bank; and Union Bancshares, Inc., t/a Citizens Bank, Defendants.

No. B–C–90–130.

United States District Court, W.D. North Carolina, Bryson City Division.

March 5, 1991.

Cozen and O'Connor, Hunter C. Quick, Charlotte, N.C., David J. Groth, Philadelphia, Pa., for plaintiffs.

Rudolph A. Bata, Jr., P.A., Rudolph A. Bata, Jr., Murphy, N.C., for defendants.

## MEMORANDUM OF DECISION

WOODROW WILSON JONES, District Judge.

Plaintiffs, First Investors Corporation and Liberty Mutual Insurance Company, brought this civil diversity action against Defendants, Citizens Bank, Inc. and Union Bancshares, Inc., alleging negligence and conversion in order to recover the value of numerous checks that were allegedly converted by Defendants and paid to Dorcas Anne Brooks, an agent of Plaintiff First Investors, on Brooks' fraudulent endorsements. Defendants have moved to dismiss for failure to state a claim upon which relief may be granted, Rule 12(b)(6), Federal Rules of Civil Procedure and for summary judgment, pursuant to Rule 56, Federal Rules of Civil Procedure. As the parties have submitted extraneous materials in the form of affidavits and exhibits the Court will treat the entire matter as a motion for summary judgment. The Court heard ar-

guments of counsel on February 8, 1991, in Asheville, North Carolina. After careful consideration of the motion and briefs, affidavits and arguments of counsel the Court enters the following findings and conclusions.

Plaintiff First Investors is a corporation organized and existing under the laws of the State of New York having its principal place of business in New York, New York. First Investors is a financial services organization and is, among other things, in the business of selling shares of nineteen (19) mutual funds. Plaintiff, Liberty Mutual is a corporation organized and existing under the laws of Massachusetts having its principal place of business in Boston and is engaged in business as an insurer. First Investors is insured by Liberty Mutual.

Defendant Citizens Bank is a corporation organized and existing under the laws of the State of North Carolina, having a branch in Murphy, North Carolina and at all times relevant hereto was engaged in business as a banking institution. Citizens Bank was recently purchased by Defendant Union Bancshares, Inc., a corporation organized and existing under the laws of the State of Georgia, having its principal place of business in Blairsville, Georgia, and is engaged in business as a banking institution.

Plaintiff First Investors alleges that in January of 1985, it hired Dorcas Anne Brooks to become one of its registered agents for the sale of shares in Plaintiff's mutual funds within the States of Tennessee, North Carolina and Georgia and assigned her to its Knoxville, Tennessee office.

Plaintiffs allege that on some unknown date, Brooks commenced a scheme by which she would offer for sale what she described as a "mutual fund" but which was not one of the nineteen (19) funds offered by First Investors. Brooks apparently sold shares of this unauthorized mutual fund to several residents of Cherokee County, North Carolina. In addition she sold authorized shares in the nineteen mutual funds offered by First Investors.

Plaintiff alleges that upon receipt of payment from her customers, Brooks would deposit the funds in account(s) at Citizens Bank in Murphy which she had opened, one of which was called a "business account." Plaintiffs allege that Citizens Bank allowed Brooks to open said accounts and deposit checks which were made payable to Dorcas Anne Brooks and/or First Investors. Plaintiffs further allege that Citizens Bank allowed Brooks to open these accounts without a corporate resolution or signature card; that no investigation of any kind was undertaken by Citizens Bank as to Brooks' authority to endorse checks made payable to her and/or First Investors; and that Brooks was given "free reign" over all the accounts.

Plaintiff First Investors alleges that it first discovered the existence of Brooks' activities on July 24, 1987, whereupon it immediately began investigation. As a result of Defendants' conduct, First Investors alleges it was forced to pay defrauded customers in excess of $639,000.00. Plaintiffs filed this action on July 16, 1990.

Based upon the Defendants' alleged actions and omissions with regard to the handling of the accounts opened by Dorcas Anne Brooks, Plaintiffs allege Defendants are liable for conversion and negligence for the full amount of Plaintiffs' loses.

As stated above Defendants have moved for summary judgment on both the negligence and conversion claims. Pursuant to Rule 56(c), Federal Rules of Civil Procedure summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In considering the motion, "the court is obliged to credit the factual asseverations contained in the material before it which favor the party resisting summary judgment and to draw inferences favorable to that party if the inferences are reasonable (however improbable they may seem)."

*Cole v. Cole,* 633 F.2d 1083, 1092 (4th Cir. 1980); see also, *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir. 1985).

As a preliminary matter, the Court notes that Defendants have submitted two documents, each entitled "Trial Brief," apparently for consideration on the motion for summary judgment. Defendants allege First Investors "ratified" the alleged unauthorized endorsements pursuant to N.C. Gen.Stat. § 25–3–404; that First Investors was contributorily negligent pursuant to N.C.Gen.Stat. § 25–3–106; that First Investors cloaked Brooks with "apparent authority" to act as she did; and, that the Defendant Bank at all times acted in good faith and in accordance with reasonable commercial standards and is therefore liable only to the extent of any funds remaining in its hands, pursuant to N.C.Gen.Stat. § 25–3–419(3).

The record before the Court clearly establishes that genuine issues of material fact exist as to each of the above asserted grounds. Summary judgment would be improper on any one or all of the above grounds. The critical issue before the Court rather, is whether Plaintiffs' action was timely filed in light of North Carolina's statute of limitations.

■ Before addressing the specific issue of whether Plaintiffs' action is barred by the statute of limitations, it becomes necessary to determine if the complaint was properly grounded in both conversion and negligence as this determination will impact the statute of limitations question. The gravaman of Plaintiffs' complaint is that the Defendant Bank paid over funds to Dorcas Anne Brooks on a fraudulent endorsement and failed to adhere to the reasonable commercial standards applicable to banking institutions. Such an action, in the Court's opinion, is properly grounded in conversion as set forth in N.C.Gen.Stat. § 25–3–419, as opposed to negligence.

In a similar case before the North Carolina Court of Appeals grounded in both conversion and negligence, the Court characterized this type of case as follows:

Wachovia is a depository bank, and N.C. Gen.Stat. § 25–3–419 (1986) provides that a depository bank ... which deals with the instrument in "good faith and in accordance with reasonable commercial standards" is not liable in conversion beyond the amount of any proceeds remaining in its hands. The critical inquiry is whether the bank dealt with the instrument in good faith and in accordance with reasonable commercial standards....

*Cartwood Constr. Co. v. Wachovia Bank & Trust Co.,* 84 N.C.App. 245, 249, 352 S.E.2d 241, *aff'd,* 320 N.C. 164, 357 S.E.2d 373 (1987).

As to *Cartwood's* negligence claim, the Court held:

Cartwood argues that Wachovia's acceptance of the checks for deposit in Patterson's account gives rise to a separate action for negligence. We disagree. Wachovia's duties regarding its handling of the instruments are specifically defined under N.C.Gen.Stat. Sec. 25–3–419 which gives Cartwood an action in conversion and provides a remedy. This assignment of error is overruled.

*Id.* at 250, 352 S.E.2d 241.

The Court is of the opinion that the case at bar is governed by the provisions of N.C.Gen.Stat. § 25–3–419 insofar as it draws into question a depository bank's handling of instruments presented for deposit on allegedly fraudulent endorsements, as opposed to an ordinary negligence action. With that in mind, the Court will proceed to the critical issue of whether Plaintiff's action was timely filed.

In general, "the question of whether a cause of action is barred by the statute of limitations is a mixed question of law and fact." *Pembee Mfg. Corp. v. Cape Fear Constr. Co.,* 313 N.C. 488, 491, 329 S.E.2d 350 (1985), citing *North Carolina State Ports Authority v. Lloyd A. Fry Roofing Co.,* 294 N.C. 73, 240 S.E.2d 345 (1978). Where the statute of limitations is properly pleaded and the facts are not in conflict, the issue becomes one of law. *Id.,* citing *Little v. Rose,* 285 N.C. 724, 208 S.E.2d 666 (1974). Such is the situation in the case at

bar. Thus the matter is ripe for summary judgment determination on the statute of limitations issue. *Ports Authority, supra.*

Defendants assert the statute of limitations as a defense arguing that the last deposit to the account of Dorcas Anne Brooks was June 9, 1987 and since this action was not filed until July 16, 1990, the complaint is time barred pursuant to the three-year statute of limitations provided for in N.C.Gen.Stat. § 1–52.

Plaintiffs argue that exactly what subsection within N.C.Gen.Stat. § 1–52 applies to this particular factual situation is arguable but that no matter which subsection applies, Plaintiffs' cause of action did not accrue until it was discovered on July 24, 1987, pursuant to N.C.Gen.Stat. § 1–52(16). By filing on July 16, 1990, Plaintiffs argue they were within the three-year statute of limitations.

The grounding of the action in both conversion and negligence did cloud what particular subsection of N.C.Gen.Stat. § 1–52 was applicable to this case. Having found that the action is one for conversion, it is clear that the applicable subsection is N.C.Gen.Stat. § 1–52(4) which provides a three-year limitation on actions "[f]or taking, detaining, converting or injuring any goods or chattels, including action for their specific recovery."

North Carolina General Statutes § 1–52(2) might arguably apply as well since this case arose "[u]pon a liability created by statute," namely N.C.Gen.Stat. 25–3–419. Either way, the limitation period is three years. Neither N.C.Gen.Stat. § 1–52(2) nor § 1–52(4) expressly provides for the three years to begin upon discovery of the wrong. Plaintiffs argue, however, that no matter which subsection applies, it must be applied in conjunction with or subject to N.C.Gen.Stat. § 1–52(16) which provides:

> (16) Unless otherwise provided by statute, for personal injury or physical damage to claimant's property, the cause of action, except in causes of actions referred to in G.S. 1–15(c), shall not accrue until *bodily harm to the claimant or physical damage to his property be-*

*comes apparent* or ought reasonably to have become apparent to the claimant, whichever event first occurs. Provided that no cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action (emphasis added).

The well established common law rule has long been that "[w]hen the right of the party is once violated, even in ever so small a degree, the injury, in the technical acception of that term, at once springs into existence and the cause of action is complete." *Pembee Mfg. Corp. v. Cape Fear Constr. Co.,* 69 N.C.App. 505, 509, 317 S.E.2d 41 (1984), *aff'd,* 313 N.C. 488, 329 S.E.2d 350 (1985), quoting *Mast v. Sapp,* 140 N.C. 533, 540, 53 S.E. 350 (1906). North Carolina General Statutes § 1–52(16) quoted above, modifies the common law rule in that it requires discovery of "bodily harm to the claimant or physical damage to his property" before a cause of action can accrue. *Id.*

The Court is aware of no cases, and none have been offered by Plaintiffs, which would support Plaintiffs' position that the "discovery rule," codified at N.C.Gen.Stat. § 1–52(16) should apply to conversion actions. Apparently the general rule is to the contrary. As stated in 18 Am.Jur.2d, a conversion action accrues at the time of the actual conversion:

> As to the time when the statutory period starts, the general rule seems to be that where an action is founded merely on a wrongful conversion of goods, the statute of limitations begins to run from the time of the conversion, where, although it is not discovered by the plaintiff until later, the defendant is not shown to have been guilty of a fraudulent concealment of the conversion.

*Id.* at p. 210; *see also,* 89 C.J.S. Trover and Conversion § 91 (1955). The general rule thus appears to be that conversion actions accrue upon the conversion itself rather than upon its discovery.

As stated above, the Court is aware of no cases and none have been cited wherein N.C.Gen.Stat. § 1–52(4) has been applied subject to § 1–52(16). The North Carolina

Court of Appeals has, however, dealt with the issue of N.C.Gen.Stat. § 1–52(16)'s applicability to another subsection of the statute, § 1–52(12), which provides for three years in which to bring suit "upon a claim for loss covered by [a] [fire] insurance policy ..." *Marshburn v. Associated Indemnity Corp.*, 84 N.C.App. 365, 353 S.E.2d 123 (1987). In *Marshburn*, the plaintiff argued that N.C.Gen.Stat. § 1–52(16) applied to cause of action otherwise subject to the limitations of § 1–52(12). Like N.C.Gen.Stat. § 1–52(4), § 1–52(12) does not expressly embrace the discovery rule. The Court declined to require that N.C.Gen.Stat. § 1–52(12) be construed in light of § 1–52(16):

> The language of the statute does not require that G.S. 1–52(12) be applied in conjunction with or subject to the provisions of G.S. 1–52(16) and we decline to read such a requirement into the language of the statute without any clear authority for doing so. Moreover, G.S. 1–52(16) provides, by its own express terms, that it is to be applied "unless otherwise provided by statute." In our view, the Standard Fire Insurance Policy limitation provision, contained in G.S. 1–52(12) and G.S. 58–176(c) ... constitutes a limitation period "otherwise provided by statute" which precludes the applicability of G.S. 1–52(16) to the present case.

*Marshburn*, 84 N.C.App. at 372, 353 S.E.2d 123.

The Court is of the opinion that the case at bar is analogous to *Marshburn* to the extent that N.C.Gen.Stat. § 1–52(4) is a separate and distinct subsection, enacted independently from § 1–52(16) and contains no provision that would indicate that it is subject to § 1–52(16). Had the legislature intended such connection or intended for the statute of limitations for conversion to be subject to the discovery rule, it could have expressly indicated that intention such as was done in the statute of limitations for fraud actions. That subsection, N.C.Gen.Stat. § 1–52(9), places a three-year limitation period on actions for fraud and expressly provides that "the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake." The North Carolina legislature could have easily included a similar provision in N.C.Gen.Stat. § 1–52(4) but did not do so.

Nonetheless, Plaintiffs argue that N.C.Gen.Stat. § 1–52(16) should apply based on the reasoning that a conversion of the type alleged herein constitutes "physical damage" to property. Accepting Plaintiffs' argument would require a much broader reading of the statute than the North Carolina courts have heretofore given it. The North Carolina courts have clearly not expanded the meaning of "physical damage to property" beyond the traditional meaning of the phrase. Its application has been limited to cases wherein latent damages have been discovered in the form of personal injuries or physical damage to property. See e.g. *Pembee Mfg. Corp.*, 313 N.C. at 493, 329 S.E.2d 350. The Court is of the opinion that N.C.Gen.Stat. § 1–52(16) was not meant to be applicable to specialized causes of action provided for in integrated statutory schemes such as found in Article 3 of Chapter 25. Absent clear authority for doing so, the Court declines to significantly expand the applicability of N.C.Gen.Stat. § 1–52(16) beyond that recognized by the courts of North Carolina and essentially overrule the common law rule of when conversion actions accrue.

The statute of limitations for conversion is clearly one "otherwise provided by statute" thereby excluded from the purview of N.C.Gen.Stat. § 1–52(16) even if the Court accepted Plaintiffs' argument that conversion of funds constitutes "physical damage to property." In addition, as set forth above, the Court is of the opinion that "physical damage," within the context of N.C.Gen.Stat. § 1–52(16), was meant to be literally interpreted. Having carefully reviewed all the materials before it and having read the cases cited by the parties, the Court concludes that the Plaintiffs' cause of action for each alleged conversion accrued at the time of that particular conversion. As the case at bar was filed more than three years after the last alleged act of conversion, the action is barred by the

statute of limitations. A judgment consistent with this Memorandum of Decision will be filed simultaneously herewith.