# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CA-01092-SCT

*LUCILLE SMITH*

*v.*

*FRANKLIN CUSTODIAN FUNDS, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | SEPTEMBER 3, 1997 |
| TRIAL JUDGE: | HON. HENRY LAFAYETTE LACKEY |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | GRADY FRANKLIN TOLLISON, III |
| ATTORNEY FOR APPELLEE: | SHAWN N. SULLIVAN |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 10/22/98 |
| MOTION FOR REHEARING FILED: | 11/12/98 |
| MANDATE ISSUED: | 3/3/99 |

### BEFORE PRATHER, C.J., ROBERTS AND MILLS, JJ.

### MILLS, JUSTICE, FOR THE COURT:

¶1. On January 31, 1994, Bernie Smith, Junior and his wife Lucille filed a civil action in the Lafayette County Circuit Court against Franklin Custodian Funds, Inc. The trial judge granted summary judgment in August of 1997. Aggrieved, Lucille Smith[1] brings this appeal assigning the following issues as error:

**I. WHETHER SMITH'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS.**

**II. WHETHER THERE IS SUFFICIENT PROOF OF A CONVERSION CLAIM.**

**III. WHETHER THERE IS SUFFICIENT PROOF OF THE UCC ARTICLE 8 CLAIMS.**

**IV. WHETHER THERE IS SUFFICIENT PROOF OF THE NEGLIGENCE CLAIMS.**

### STATEMENT OF THE FACTS

¶2. Bernie L. Smith III, Lucille and Bernie Smith's son, owned and operated a business known as Institutional Financial Services, Inc. which was a subsidiary of Raymond James and Associates, Inc. Bernie III was employed by Institutional Financial Services and served as an investment advisor for his parents Bernie and Lucille Smith Junior (hereinafter the Smiths) from 1986 until 1993. While he

was a representative for Raymond James Inc., Bernie III purchased shares of Franklin US Government Securities Fund for the Smiths. On March 13, 1987, the Smiths owned securities valued at $113, 733.30 in the Franklin US Government Securities Fund.

¶3. On or about March 13, 1987 Franklin Funds received an Irrevocable Stock or Bond Power bearing signatures in the names of the Smiths. The form also bore a statement and seal in the name of Raymond James which guaranteed that the Smiths' signatures were genuine. The form instructed Franklin Funds to liquidate the securities in the Smiths' account. Lucille Smith claims that neither she nor her husband signed the Irrevocable Stock or Bond Power and that Bernie III signed their names to the document.

¶4. Upon receipt of the Irrevocable Stock or Bond Power form, Franklin Funds liquidated the securities in the Smiths' account and issued a check on March 30, 1987 payable to "Raymond James and Assoc. Inc. a/c Bernie and Lucille Smith J/T" in the amount of $113,733.30. Franklin Funds mailed the check to Raymond James, Inc. which was listed as the Smith's brokerage company. Bernie III received the Franklin Funds check and deposited it into the Raymond James, Inc. account. Subsequently, Raymond James, Inc. issued a check to the Smiths. The Smiths never received this check because Bernie III forged the Smiths' endorsement on the back of the check and deposited the check into his personal account. Bernie III never repaid his parents.

¶5. Bernie III concealed his fraud from his parents by assuring the Smiths that their investments were doing well and by sending them a $1200 per month income check which they believed to be income produced from their investments.[2] The Smiths contend that they discovered Bernie III 's deceit in March 1993. Subsequently, the Smiths gave notice to Franklin Funds that their securities were liquidated without their authorization and asked Franklin Funds to restore their securities or pay the proceeds. When Franklin Funds refused the Smiths brought this suit.

## STANDARD OF REVIEW

¶6. When reviewing a lower court's decision to grant summary judgment this Court will employ a de novo standard of review. *Moore ex rel. Benton County v. Renick*, 626 So.2d 148, 151 (Miss. 1993). In other words, we will use the same standard applied by the trial court. *Renick*, 626 So. 2d at 151. A de novo review of a case requires that we examine all evidence in the record in a light most favorable to the non-moving party. *Id.* (*citing Smith v. Sanders*, 485 So.2d 1051, 1054 (Miss. 1986) . Mississippi Rule of Civil Procedure 56(c) dictates that summary judgment is only granted when the moving party illustrates that there is no genuine issue of material fact and he is entitled to judgment as a matter of law. *Mink v. Andrew Jackson Cas. Ins. Co.,* 537 So.2d 431, 433 (Miss. 1988). Thus, when we review a Rule 56(c) motion that has been granted, we do not rule on the issues, but rather we determine whether there are issues to be tried. *Mink*, 537 So.2d at 433.

## I. WHETHER SMITH'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS.

### A. Whether the statute of limitations was tolled by the Fraudulent Concealment Statute.

¶7. The trial judge found that Smith's claims were barred by the statute of limitations because more than six years had passed from the date the funds were liquidated until the date this action was commenced. Smith claims that the statute of limitations was tolled by Mississippi's Fraudulent

Concealment statute. The Mississippi Fraudulent Concealment statute reads as follows:

> If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered.

Miss. Code Ann. § 15-1-67(1995).

¶8. This Court has interpreted an identical statute, § 2312 of the 1930 Mississippi Code, which allows tolling of the applicable statute of limitations in a case in which a defendant or any person in privity with a defendant fraudulently concealed a cause of action. ***Burton v. John Hancock Mut. Life Ins. Co.***, 171 Miss. 596, 604,157 So. 525, 526 (1934). Since Franklin Funds did not commit the fraud, the question is whether Franklin Funds was in privity with Bernie III.

¶9. Smith claims that Bernie III was in privity with Franklin Funds pursuant to a dealer agreement between Franklin Funds and Raymond James, Inc. The agreement between Franklin Funds and Raymond James, Inc. provided that Raymond James and its representatives would market and sell Franklin Funds' securities and would in return receive commission on the sale of securities. Bernie III was a registered representative of Raymond James and benefitted from the dealer agreement when he bought shares of Franklin Funds for the Smiths. Smith claims that this mutual financial interest between Bernie III and Franklin Funds creates privity between them.

¶10. Franklin Funds contends that the fraudulent concealment statute does not toll the statute of limitations because Franklin Funds was not in privity with Bernie III. Franklin asserts that outside the realm of disputes involving property estates, the fraudulent actor must be acting in the scope of an agency relationship with the third party in order for the limitations period to be tolled against the third party. Franklin Funds maintains that Bernie III was acting as Smith's agent and not as an agent for Franklin Funds.

¶11. We hold that in order to toll the statute Smith must prove that Bernie III was in privity with Franklin Funds or acting as an agent of Franklin Funds. The record does not reflect sufficient facts to make this determination. For this reason, we reverse the summary judgment and remand this case for trial.

¶12. In addition, Franklin Funds asserts that Smith's claim of fraudulent concealment should be denied because Smith failed to plead fraudulent concealment with particularity. Franklin Funds notes that Mississippi Rule of Civil Procedure 12(b) requires that fraud be pled with particularity. Franklin Funds maintains that as a species of fraud, fraudulent concealment must also be pled with particularity. ***J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.,*** 76 F.3d 1245, 1255 (1st Cir.), *cert. denied,* 117 S.Ct. 81 (1996). This argument is brought for the first time on appeal. It is well settled that this Court will not address issues raised for the first time on appeal. ***Crowe v. Smith***, 603 So.2d 301, 305 (Miss. 1992). Moreover, the statute of limitations is an affirmative defense. Our rule does not provide for a responsive pleading after the assertion of an affirmative defense. M.R.C.P. 7(a). The comment to Rule 7 states: "Affirmative defenses in the answer are deemed denied or avoided, and a reply is required if the answer contains a counterclaim denominated as such. Otherwise, a reply is unauthorized and may be stricken or disregarded."

[Comment, M.R.C.P. 7](). Fraudulent concealment raised in response to the statute of limitations defense is not to be plead at all.

## B. Whether the statute of limitations was tolled by the Discovery Rule.

¶13. Next, Smith contends that the statute of limitations was tolled by the discovery rule presented in Mississippi Code Annotated § 15-1-49(2) which states:

> In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.

Miss. Code Ann. § 15-1-49(2) (1975).

¶14. Smith asserts that a tort is not completed and the cause of action does not arise until the plaintiff employing reasonable diligence discovers the injury. Franklin maintains that if the Court adopts Smith's interpretation of § 15-1-49(2) then the statute would be broadened to allow any plaintiff who, for whatever reason, failed to discover his claim, to use the discovery rule to toll the statute of limitations. Franklin argues that this would effectively eliminate the words "latent injury" from the statute.

¶15. In *Owens-Illinois, Inc. v. Edwards*, 573 So.2d 704, 708-09 (Miss. 1990) we held that the discovery rule will be applied to products liability cases. We opined that the cause of action accrues and the statute of limitations begins at the time the plaintiff can reasonably be held to have knowledge of the injury or disease. In *Owens-Illinois*, Charles Edwards was employed at the Ingalls Shipbuilding facilities in Pascagoula, Mississippi from 1940 to 1984. *Owens-Illinois*, 573 So.2d at 705. From the beginning of his employment until 1976, Edwards was routinely exposed to asbestos. On August 26, 1986 Edwards was diagnosed with an asbestos related disease. He filed suit against his employer, Owens-Illinois, Inc. on September 29, 1986. Owens sought summary judgement claiming that the statute of limitations had run since the last date Edwards was exposed to the asbestos which caused his injury. We applied the discovery rule to toll the statute of limitations and held that Edwards had a latent injury and that the statute of limitations did not begin to run until August 26, 1986, the date that he was diagnosed with the injury.

¶16. We note that the majority of jurisdictions have held that the discovery rule will not apply to actions involving conversion of negotiable instruments unless the defendant asserting the statute of limitations is involved in fraudulent concealment. [(3)] We hold today that the rule adopted by a majority of our sister jurisdictions is sound and should be applied in our *jurisprudence*. We therefore hold that the discovery rule is inapplicable in actions involving conversion of negotiable instruments unless the defendant asserting the statute of limitations is involved in the fraudulent concealment.

## C. Whether the Statute of Limitations is tolled by the Continuing Tort Doctrine.

¶17. Smith asserts that the Continuing Tort Doctrine should toll the statute of limitations. This Court defined the Continuing Tort Doctrine as follows:

> [W]here a tort involves a continuing or repeated injury, the cause of action accrues at, and limitations begin to run from, the date of the last injury, or when the tortious acts cease. Where

the tortious act has been completed, or the tortious acts have ceased, the period of limitations will not be extended on the ground of a continuing wrong.

A "continuing tort" is one inflicted over a period of time; it involves a wrongful conduct that is repeated until desisted, and each day creates a separate cause of action. A continuing tort sufficient to toll a statute of limitations is occasioned by a continual unlawful acts, not by continual ill effects from an original violation.

*Stevens v. Lake*, 615 So.2d 1177, 1183 (Miss. 1993)(*quoting C.J.S. Limitations of Actions, § 177*at 230-31). Indeed, we opined that continuing or repeated injuries can give rise to liability even if they persist outside the time period for the initial injury, but we noted that the defendant must commit repeated acts of wrongful conduct. *Stevens,* 615 So.2d at 1183 (*citing Hendrix v. City of Yazoo City*, 911 F.2d 1102 (5th Cir. 1990). We have held that we will not apply the continuing tort doctrine when harm reverberates from one wrongful act or omission. *Id.*

¶18. The Franklin Funds shares were liquidated in March of 1987. There was no other time at which the Franklin Funds were liquidated. Bernie III may have continued to conceal this act[(4)], but there was only one act regarding Franklin Funds. Thus, if the Smiths were injured by Franklin Funds, they were only injured once. Therefore, the Continuing Tort Doctrine does not toll the statute of limitations.

¶19. Smith also maintains that the theory of equitable tolling tolls the statute of limitations in this case. The theory of equitable tolling provides that where a plaintiff's delay in filing is caused by the defendant's misrepresentation, the statute is tolled. *Amburgey v. Corhart Refractories Corp.,* 936 F.2d 805, 810 (5th Cir. 1991). The Fifth Circuit in *Amburgey* and many other cases has applied equitable tolling in situations involving actions against employers and the EEOC.[(5)]We do not find the theory of equitable tolling applicable in this case.

## II. WHETHER THERE IS SUFFICIENT PROOF OF A CONVERSION CLAIM.

¶20. In *Misssissippi Motor Finance, Inc. v. Thomas*, 246 Miss. 14, 149 So.2d 20 (1963), this Court set out the elements of conversion as follows: "To make out a conversion, there must be proof of a wrongful possession, or the exercise of a dominion in exclusion or defiance of the owner's right, or of an unauthorized and injurious use, or of a wrongful detention after demand." *Sivilis v. Aldridge*, 62 Okla. 89,162 P. 198. *Paccar Financial Corp. v. Howard*, 615 So.2d 583, 587 (Miss. 1993)(*quoting Mississippi Motor Fin.,* 246 Miss. at 20,149 So.2d at 23). In other words, conversion requires the intent to exercise dominion or control over goods inconsistent with the true owner's right. *Walker v. Brown*, 501 So.2d 358, 361 (Miss. 1987).

¶21. In the case *sub judice*, the trial judge opined that Franklin Funds delivered the proceeds to Raymond James Inc., Lucille Smith's agent, and thus, there was no conversion. Smith contends that Bernie III had no authority to liquidate her securities in Franklin Funds and therefore conversion occurred when Franklin Funds liquidated the securities and sent Raymond James, Inc. a check. The real issue here is whether Bernie III had authority to liquidate the Smiths' securities in Franklin Funds. If the Smiths gave Bernie III this authority, then Franklin Funds did not convert the Smiths' property. However, if he did not have this authority, then Franklin Funds may be guilty of conversion. The record reflects that in another civil suit Lucille Smith admitted in her deposition that it was generally

permissible for Bernie III to liquidate her securities. However, in a sworn affidavit submitted to the trial court on the fourteenth of May, Smith states that Bernie III did not have the authority to liquidate her securities in Franklin Funds. Clearly, whether Bernie III had authority to liquidate these securities is a question of fact to be resolved at trial. Thus, we find that the trial judge should have allowed a jury to make this determination.

## III. WHETHER THERE IS SUFFICIENT PROOF OF THE UCC ARTICLE 8 CLAIMS.

¶22. Smith asserts that she is entitled to recover her securities under Mississippi Code Annotated § § 75-8-311(b) and 75-8-404(3) (Supp. 1995). Smith is misguided in relying on sections of the code that were enacted in 1990. The Franklin Funds were liquidated in 1987. Sections 75-8-311(b) and 75-8-404(3) were both revised in 1990 and repealed in 1996. Nothing in the 1990 revision indicated that the legislature intended for the revisions to apply retroactively, so we must apply the revisions prospectively which means that they do not apply to the present case.

¶23. The sections of the Code that Smith refers to that were effective in 1987 read as follows:

> Unless the owner has ratified an unauthorized indorsement or is otherwise precluded from asserting its ineffectiveness . . .

> (b) an issuer who registers the transfer of a security upon the unauthorized indorsement is subject to liability for improper registration.

Miss. Code Ann. § 75-8-311(b)(1972).

¶24. Franklin Funds notes that at the time this statute was effective, it defined securities as "instruments" that are issued in bearer or registered form. Miss. Code Ann. § 75-8-102(1)(a)(1972). Franklin contends that Smith's securities were uncertified securities[6] and as such were not the type defined and dealt with by Section 75, Chapter 8 at the time the liquidation occurred. Further, Franklin maintains that there was no violation of § 75-8-311 because Bernie III was authorized to transfer and liquidate his parents' securities.

¶25. As stated *supra*, whether Bernie III had authorization to liquidate his parents' securities is a jury question. We agree with Franklin's contention that § 75-8-311 does not apply if the Smiths' securities were uncertified; however, the record is silent as to this issue. Therefore, we remand this issue to the trial court to determine whether or not the Smiths' securities were certified. If they were certified, then § 75-8-311 in effect in 1987 does apply to this case and a jury should determine whether Bernie III was authorized to make the indorsement. If he was not, then Franklin Funds may be liable under § 75-8-311.

## IV. WHETHER THERE IS SUFFICIENT PROOF OF THE NEGLIGENCE CLAIMS.

¶26. Finally, Smith maintains that Franklin Funds was negligent in allowing Bernie III to fraudulently liquidate the Smiths' account without their authorization. Smith argues that Franklin Funds was their broker and as such was in a fiduciary relationship with her and her husband and that it had a duty to properly maintain their mutual fund account. Smith contends that Franklin Funds breached that duty by failing to use reasonable care and allowing Bernie III to embezzle the funds in the account with the use of a forged endorsement of a Redemption Request Form. She argues that Franklin Funds had

employed no method of detecting and preventing fraudulent liquidations, that it had no procedures to verify the authenticity of her signature or her husband's signature, and that the signature guarantee utilized by Franklin Funds was fraudulent. Further, she claims that Franklin Funds was negligent in not obtaining their home mailing address which resulted in a failure to forward direct correspondence to the Smiths.

¶27. Franklin Funds argues that it is an issuer of stocks rather than a broker. Franklin asserts that as an issuer of stocks it did not owe any fiduciary duty to the Plaintiff. Further, Franklin maintains that the Smiths made no effort to plead or prove that there was a fiduciary duty between themselves and Franklin Funds. The Smiths did in fact plead that Franklin Funds was negligent. However, the Smiths did not have an opportunity to put on evidence of a fiduciary relationship because summary judgement was granted in favor of the defendants. Thus, we find Franklin's second contention to be without merit.

¶28. This Court has held that determining the existence of a fiduciary relationship is a question of fact. *Peoples Bank & Trust Co. v. Cermack*, 658 So.2d 1352, 1358 (Miss. 1995). The person asserting that a fiduciary relationship existed has the burden of proving the existence of such a relationship by clear and convincing evidence. *Id.* (*citing Norris v. Norris*, 498 So.2d 809, 813-814 (Miss. 1986)). In *Cermack* we adopted the standard for determining whether a fiduciary relationship arises in a commercial transaction set forth by the Fifth Circuit in *Carter Equipment v. John Deere Indus. Equipment*, 681 F.2d 386 (5th Cir. 1982), which is:

> ...a fiduciary relationship may arise in a commercial transaction when the circumstances establish that (1) the parties have "shared goals" in the other's commercial activity, (2) one party justifiably places trust or confidence in the integrity and fidelity of the other, and (3) the trusted party has effective control over the other party.

*Cermack*, 658 So.2d at 1359.

¶29. In the case *sub judice*, Smith cites cases in which brokers were found negligent for breaching fiduciary duties to their clients. *Lichtenstein v. Kidder, Peabody & Co.*, 840 F.Supp 374 (W.D. Pa. 1993); *Merrill Lynch Pierce Fenner & Smith, Inc. v. Cheng*, 901 F.2d 1124 (D.C. Cir. 1990). The facts in the record on this point are sparse; however, it appears that Franklin Funds was an issuer of stock and Bernie III and Raymond James Inc. were the Smiths' brokers. Thus, we find the cases cited by Smith unpersuasive. Nonetheless, we hold that Smith should have been given the opportunity to prove that Franklin Funds was negligent and that a fiduciary relationship existed. Therefore, we remand this case for a trial.

## CONCLUSION

¶30. We hold that the trial judge should not have granted summary judgment in this case. Several questions of fact need to be determined by a jury. First, a jury should decide whether there was privity between Bernie III and Franklin Funds. If a jury finds that there was privity, then the statute of limitations should be tolled by Mississippi's Fraudulent Concealment Statute, § 15-1-67 and Smith should then be allowed to present her remaining claims to the fact finder.

¶31. **REVERSED AND REMANDED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, ROBERTS, SMITH AND WALLER, JJ., CONCUR. McRAE, J., NOT PARTICIPATING.**

1. Lucille Smith's husband Bernie Smith Jr. has passed away, so she is now the sole plaintiff.

2. Franklin Funds was one of many investments that the Smiths had with Raymond James, Inc.

3. *Menichini v. Grant*, 995 F.2d 1224, 1229 (3d Cir. 1993); *Husker News Co. v. Mahaska State Bank*, 460 N.W.2d 476 (Iowa 1990); *Kuwait Airways Corp. v. American Sec. Bank*, 890 F.2d 456, 460-63, 466 (D.C. Cir. 1989); *First Investors Corp. v. Citizens Bank, Inc.*,757 F.Supp. 687, 690-92 (W.D.N.C. 1991), aff'd mem., 956 F.2d 263 (4th Cir. 1992); *Wang v. Farmers State Bank of Winner*, 447 N.W.2d 516, 518-19 (S.D. 1989); *Southwest Bank & Trust Co. v. Bankers Commercial Life Ins. Co.,* 563 S.W.2d 329, 331-32 (Tex.Civ.App.1978); *Gerber v. Manufacturers Hanover Trust Co.*, 315 N.Y.S.2d 601, 603 (1970).

4. The Smiths had numerous investments, including Franklin Funds, through Bernie III and his company. Although Bernie III had fraudulently cashed out many of their investments, he continued sending them $1200 a month "dividend checks." The Smiths believed that these checks were dividends from Franklin Funds as well as their other investments.

5. This Court and the Fifth Circuit have only employed the doctrine of equitable tolling in employment cases which involve governmental agencies.

6. Uncertified securities are securities which are registered, but are not represented by any paper.